If we were to affirm the board in the first case, does that render this case moot in light of the Fresenius case and other decisions in this court? I believe it does. It's a means plus function clause, right? So the question is, do we have an outlier? Well, it's the same patent. And it's the same clause. If the board says that the patent is invalid, then the patent goes away and it doesn't matter what's going on in the district court, I take it. Right. Those are the only claims that were pending. So that's correct. So it's construction of the means plus function clause. The means for detecting is the only one. There was a function and there was corresponding structure. It's a specific algorithm. The question is whether that algorithm is sufficiently disclosed. We had a two-step algorithm of setting this specific criteria of a mobile origination transaction and a predefined trigger for certain transactions with an MSID or dialed digit trigger, depending on which claim we're talking about. And the court found that there was a setting of the criteria and that there was a comparing of the criteria to the monitored data, but it said it wasn't a sufficient algorithm. Yeah. Basically, the district court said that the structure that you point to is nothing but a restatement function. Right. And we disagree with that because the function itself doesn't say anything about setting criteria and it doesn't say anything about comparing with the monitored data. We have very detailed examples in our patent that tells you exactly what GSM standards to look for for the mobile origination transaction and the termination transaction. It tells you exactly what data to look for for the trigger. So very specific examples. And it's more than just restating the function because there's nothing in the function itself about this setting and this comparing. And if we look at this where it's case law, we found two-step algorithms more than sufficient. And I think my opponents didn't even address that. For example, in the Allwoods course. Of course, a two-step algorithm can be sufficient. That's not really the question. The question is whether the algorithm here does anything more than restate the function. And it does because it's telling you to look for specific criteria and compare that to the monitored data. And if you do and you find a match, then you accomplish the function. The question, do we need more structure to accomplish that function? Do we need additional steps? Well, that would run afoul of requiring additional structure. We don't need any additional structure to accomplish this function. In the Ivermouth case, it said user input data compared to saved data is an algorithm. It's very similar to what we have here. If we look at the Allwoods, it said as a means for outputting. It said receiving the data and outputting the data was a sufficient algorithm. So this is a sufficient algorithm to perform the actual function that we have. And their main argument of appeal was to change the claim around. And they're trying to broaden out the function so that our structure is insufficient. They're making all kinds of new claim construction arguments here on appeal. So our algorithm performs the function. It falls within the case law. It's not one of these cases where, like Aristocat or ergo licensing, where you had a control means and the patent said control device and there was nothing else disclosed. Or it said it's got the skill and the art to figure out how to implement this in software. We don't have that situation here. If we talk mobile origination, we tell you exactly what transactions to look for. We cite to the GSM standard. We tell you which data fields to look for within those standards. And therefore, it's very specific and it accomplishes the function. And to add additional things, I think Polaris has said, well, we need to harvest data. Or we need to select particular triggers. Well, that's not part of the function. Do you think it's fair to say that this algorithm is equivalent in a general sort of way to one that would say select a feature and then determine if that feature is present? No, I don't think it's about selecting a feature. I think it's about setting the criteria. Isn't setting the criteria selecting a feature? In other words, you're establishing what it is you're looking for. And then the second step is you'll look for it. And if you find it, you've detected it. Isn't that what you're saying? That's what we're doing, yes. Right. I tell you what's troubling me is that it seems to me that your algorithm that you've in the specification to establish some kind of algorithm. But I'm just wondering whether this algorithm isn't so broad that it just goes way beyond the structure that you've described and therefore would capture embodiments that are outside of the structure that you've described in the specification, which would be contrary to 112F. Right. That's my concern. So if you want to... I understand your concern. And so we gave a lot of many different examples within the mobile origination. I don't see how that helps you because you're not... The definition of structure that you proposed didn't select an example. It selected a very broad description and you're saying, well, there are examples that come within that description. I don't see how the examples help you when you ask for such a broad definition of the algorithm. Well, I don't think... I think it's broad enough to support that. I think the disclosure is broad enough to support the algorithm because we say on COM13 line 1 through 5, we give the general concept that your preset rules and the preset rules then gives you sufficient examples so that you know. This isn't a case where we're trying to claim other transactions. The specific examples are not definitional. I mean, this is not a written description problem. The question is, what's the structure that corresponds to the function here? And you can't say, well, we propose such and such an algorithm and then there are other examples that fall within that algorithm. The fact that there may be other examples that fall within the algorithm doesn't give any more definition to the algorithm that solves your problem. Well, in the joint claim construction, we set out all those, 143 I think it is, we set out all those examples, cited specific line numbers, and those are the examples that support this algorithm. Well, help me. I don't understand what the examples have to do with it. If you come up with an algorithm which is so broad that it covers those examples and other examples not listed there, then there's not a correspondence that's required. Well, in the Harris case, there was a computational means and there were formulas disclosed in the patent. And the court said, I believe in that case, that you weren't limited to the exact formulas, that it was sufficient disclosure that it was broad enough to cover the algorithm in that case and you didn't have to rely on the very exact formula because it disclosed sufficiently the one skill in the art, this is the algorithm. So I think we're within... I don't think you're really responding to my question. Okay. The question is not whether there are examples that fall within your definition of structure, but whether your definition of structure is so broad that it encompasses and just merely restates the function. I don't think it's so broad that it's covering things that we didn't disclose. I think we disclosed it broad enough. The examples in context with the general disclosure with the filter at column 13 lines 1 through 5 was broad enough to support this algorithm saying, look at preset rules and then compare that to the monitored data to find a match. It could do many examples. So for these particular transactions, we've given... I just don't understand that. I don't understand how the fact that you can have examples which fall within the algorithm makes the algorithm sufficient structure. So we've disclosed a broad algorithm that says preset rules, right? And the preset rules, you compare it to the monitored data. Now that's a very broad algorithm because it doesn't tell you exactly what the preset rules. Then we go and say, okay, here's a mobile origination. You can go for mobile origination as the preset rules. And then it gives you further examples to support that. And so that's the basis for the setting. You're not suggesting that you're limited to the examples in terms of the breadth of the claim, I take it. We'd be happy to be limited to the examples that we cited in the joint claim construction statement. But that's not the way you argued it. You didn't say you were limited to the examples. You said, here's a broad algorithm that we want all of us. I don't really think it's... I disagree that it's a broad algorithm. I think it's supported by the disclosure. You yourself characterized it as a broad algorithm a moment ago. I said the broad algorithm, they said preset rules of a filter. And that's talking about just in general in the patent. That's not talking to this specific claim with this specific algorithm with respect to this. It narrows it and then says with mobile origination and mobile termination and with the MSID and dialed digits, it gives you very narrow algorithms with respect to those. We're not trying to go outside of mobile origination or termination. We're not trying to claim other ways of finding the mobile origination or termination traction other than what we disclosed. Look for the indication of them and compare it to the monitored data. So we're not trying to go outside of what we disclosed in the patent. Okay. Anything further? That's it, Your Honor. Thank you. Mr. McGeary. Good morning, Your Honor. Mr. McGeary for Polaris Wireless. I was intended to address a couple of subjects. One of them, the first one was going to be what's the actual question here. I think that was adequately addressed in the previous argument. The question is not how many steps constitutes an algorithm. It's the sufficiency of the algorithm. I also wanted to sort of amplify the point that had come out regarding the examples in the patent. The examples do nothing to say about whether or not the algorithm is sufficient. In fact, we think the number of examples that are encompassed and brought out in the brief actually cuts against their argument that the algorithm is limiting in any way. What it actually demonstrates is that the algorithm is unlimited. It doesn't place any scope on the claims. It's the same thing that was bothering the district court. And I think that if we examine the language of the algorithm itself, it states, you know, for claim 113, setting one or more indicia of a mobile origination or mobile termination transaction. Well, it does have those limitations to it, right? Well, let's think about what the limitation actually is. One or more indicia. It can be any number of indicia. An indicia itself is an empty word. Right, but they nonetheless have to be indicia of a mobile origination or mobile termination transaction, right? But nothing comes prepackaged as an indicia of a mobile origination or a mobile termination transaction. What counts as an indicia of that is something that needs to be programmed into a computer. If anything, that's what their example showed and also what Dr. Gottesman's declaration showed. Dr. Gottesman in his declaration in paragraphs 66 and 67, and that's A1089, that declaration was submitted to the district court. Ostensibly, it seemed like an enablement type of question. Dr. Gottesman didn't opine as to how the proposed algorithm might limit a person of origin. Well, returning to the question that I was really interested in getting a response on, you could say that, as the district court did, that if this algorithm said, for example, setting one or more criteria or triggers or whatever you want to say, and detecting by involving with the monitored data with the trigger that you're using as a test, that that would be the equivalent of just detecting because setting a criterion and then looking for whether that criterion is satisfied, as the district court said, is pretty close to detecting. That's pretty much the way a computer would do any detection. But this is more limited in that it focuses, at least to some extent, on those two types of signals, right? So it is not as broad as the algorithm I just described. I think that it is because mobile origination or mobile termination transaction isn't one type of signal. As you heard earlier, a mobile origination transaction is a transaction that occurs when a mobile places a call. It doesn't come prepackaged as one type of signal with one type of data field. There are other types of signals that you would say that is not a mobile initiation signal, right? You would only say it once you actually looked at it and did some thinking and developed an algorithm to tell a computer how to determine what counts as mobile origination and what counts as mobile termination. In other words, once you are saying one or more indicia and saying detecting one or more indicia, it ends up being the same thing. It's a human being. That's what Dr. Gottesman said. A human being has to define what's going to count as the indicia. So you end up with a complete tautology between setting and detecting. That's why setting doesn't add anything to detecting. And then when you couple with the proposed algorithm that it's one or more, by definition or more makes it unbounded. How many can you think about in terms of what will count as an indicia? They crafted an algorithm that was really intended to capture every possible way of doing it. By doing that, they created an algorithm that places no bounds on the algorithm, which is why Dr. Gottesman's declaration only talks about enablement. What a person of ordinary skill in the art could do or could program and some of the Here's how this is limited and why it places a limitation on the claim. It's an unbounded claim. It doesn't tell you how to get anywhere. It just says set indicia and then find those indicia and then under these broad categories of mobile origination and mobile termination. Do they need to have that broad an algorithm in order for their patent to read on your devices? Well, certainly from our perspective, they could have made that as broad as the universe and it would not have hit our devices. But certainly there was a strategic choice. Let me ask the question the other way. Of course, we don't know because this case has not gotten far enough to know exactly what the devices are and so forth, or at least it isn't before us. But if they had limited themselves and described an algorithm that specifically limited themselves to the examples, would that algorithm, more limited algorithm, have read on your devices as you see it? And if not, why? We believe it would not have read on our devices because our devices, the other aspects of the claim, have elements that our devices do not have. So whether or not they limited it to a particular example, our non-infringement contentions would have remained. Nevertheless... Based on other limitations in the claim? Based on other limitations. How about this limitation? I can't speak to it off of the question that you're posing right now. I'm sorry about that. I was just wondering whether we're arguing... In other words, they have a... My concern is, as I expressed to your opposing counsel, is that they have an algorithm which looks very broad. They have disclosure and a specification that looks more specific. If you trim the algorithm back to the specifics of the disclosure, does that rescue the validity of the claims? My answer would be no, certainly for the reasons that were set forth in the IPR. Additionally, if you look at the example... No, but that's on a different issue. The IPR, as a matter of fact, ruled against you on this issue. So that doesn't help you. Right. In terms of the examples that they have in their brief, it identifies certain transactions that are mobile origination transactions, and it goes and identifies certain fields that are in there. But it never says how to take those transactions and those fields and remove them and find a match. Some of those fields appear both in mobile origination and mobile termination transactions. To take it one step further, we had said in our brief that just because you're applying a preset filter or doing matching doesn't tell you how to get there. The filtering could have multiple steps. It's the arrangement of those rules that would get you there that becomes the algorithm. It reminds me of doing searches in some of these search engines which have a lot of operators, ANDs and ORs and NOTs, and you can craft a search that narrows yourself down. It's the sequence of the filtering that is being set up to get you where you want to go that counts as the algorithm. That's the step-by-step. In their examples, where they give examples of data that might be indicators, they still need to disclose how to get from one place to the other. The problem with their specification is it's very heavy on enablement, but it's not heavy on algorithmic structure because I believe these claims were added much later in the prosecution history. I would have to check that, so maybe I shouldn't have said it. The point I'm trying to make here is the structure is very heavy on enablement and examples, but what we need when you're doing a broad means plus function claim is a one-to-one correspondence between an algorithm and the function you are trying to get to. Their function is very, very broad. It's detecting not only mobile origination or mobile termination transactions. Remember, the function that the court found was detecting at least one of. At least one network transaction including one of a mobile origination or mobile termination transaction. But presumably you would be making exactly the same argument if they took out the at the indicium, right? You would still think it was too broad. Yes, yes. So that's just window dressing really. Well, the question was whether or not an example could save the claim, and I don't think that it could because what needs to save the claim is an algorithm that will operate on a broad number of transactions, not just mobile origination or mobile termination. They don't have that. They show you how to detect a mobile origination. Actually, they don't even show you how. They give you enough, as Dr. Gottesman said, that a person of ordinary skill could with ordinary skill write a computer algorithm to make those detections. They never attempted to identify algorithmic structure that would support these means plus function elements. Basically what we have is a challenge to the specification and then in the context of litigation going back and mining the specification to see if it can be supported. It wasn't forethought on part of the patent draftsman to draw a one-to-one correspondence of algorithmic structure. Now, in your brief, you did not address several of the cases that they specifically and heavily rely on, which is a tactical choice on your part, but it always leaves a question in the court's mind as to whether you had an answer. Can you tell us if you do have an answer, for example, as to why, say, the University of Pittsburgh case is not pertinent here to support the appellant's position? Yes. So I read the University of Pittsburgh case to be a case that... Did you decide that those cases just weren't even worth attention? They were so far off? That is correct. I mean, you will see that in our brief, the only case that we really discussed at length, other than setting forth what's not disputed about the law here in terms of how to deal with means plus function claim elements, was Ivermouth. It seemed like... Which happens to be the case that's in your favor. Which happens to be the case... The ones that are against you, which you... There are other cases that we could do a string site to and say that it's in our favor, where the result was in our favor. The point is that these are fact specific. You know, these are not... What is it about... I mean, Pittsburgh strikes me as carrying the... being a representative of a minimalist approach to what's required in an algorithm. Why is... And it's pretty close to this algorithm. Actually, if you look at the algorithm that was involved in Pittsburgh, why is it distinguishable? You know... With specific attention to the algorithm used in Pittsburgh. Yeah, so I'm going to have to confess that I read their citation to Pittsburgh as being limited to this argument that a two-step algorithm is enough. I didn't concentrate in my preparation much on what the actual algorithm was there. I really concentrated more on typhoon touch text, which is, to me, was the case that they were really relying upon with respect to why they had a sufficient algorithm, rather than just this one-step, two-step. Typhoon touch, I concentrated on more. I'm not as prepared to address University of Pittsburgh on the level of the algorithm. And I apologize for that. I read that as dealing with one or two steps more so than being heavily relied upon for the sufficiency of the algorithm. But the hall voice and typhoon touch text are what I prepared for with respect to this argument on that question. And they led their argument on this issue with University of Pittsburgh. But anyway... It is a non-prep. It is a non-prep, that's for sure. And there was a dissent, but it's there. Yeah. But in any event, I mean, the distinguishing factor in these is that all those cases, typhoon touch and hall voice, which were the other two they relied upon, did have structure in it. Hall voice had the Windows operating system, which is what the court relied upon as the structure that could perform the operations. And typhoon touch text had a touch text input device and a library of responses that it would then take the response that was on a particular area of the screen and compare it to what was in the library. So there was specific structure there. I'll note that University of Pittsburgh is an unpublished opinion, and the other two cases which are published are easily distinguishable, and I remember being much, much closer. Okay. Okay. Thank you, Mr. Mayor. Just a couple quick points, your honors. Third non-infringement petition was based on the means for initiating clause, not the means for detecting clause. It was a direct indirect argument that I think went away at claim construction, so it wasn't on the means for detecting. He refers to Dr. Gosman's declaration. Dr. Gosman's declaration said, given the algorithm, I can program a computer. I think that's right in keeping with this court's precedent for 112.6. He's not adding to the disclosure. He's giving the algorithms. I think there's two lines of cases you can add to the disclosure, but you don't have to disclose source code for your 112.6. And the Ibermuth case actually said that inputting data and matching it is a computer algorithm, and so that's very similar to what we have, and I think the University of Pittsburgh case is very close, although an unpublished opinion with the dissent is very close to ours because it said detecting, and it said identifying and tracking, and I think our algorithm is actually even a little more specific than theirs. Unless you have more questions, that's all I have, your honors. Okay. Thank you, Mr. Monello. Thank you, both counsel. The case is submitted.